UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HERMAN FULTON,

                Petitioner,                                    Hon. Wendell A. Miles

v.                                                  Case No. 1:04-CV-183

RAYMOND BOOKER,

                Respondent.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Fulton's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Fulton's petition be **denied**.


## BACKGROUND

As of September 22, 1997, Lewis and Zana Schultz resided in a mobile home. (Trial Transcript, May 11, 1999, 139-44). At approximately 9:30 a.m. on the morning of September 22, 1997, Lewis Schultz departed the residence to go to work, leaving Zana Schultz home alone. *Id.* at 150-51. At approximately 9:40 a.m. Zana Schultz observed a maroon colored Chevy van proceeding up her driveway. *Id.* at 150-53, 162. The van did not stop in the driveway, but instead proceeded to the rear of the residence where it was parked near the back door, in a location that rendered it invisible from the roadway. *Id.* at 150-53.

The man who had been driving the van then exited the vehicle, walked to the rear of the Schultz residence and began knocking on the back door. *Id.* at 153. Because she was alone and did not recognize the man, Zana Schultz did not answer the door. *Id.* After receiving no answer, the man began looking in the uncovered windows of the mobile home. *Id.* at 153-54. At this point, Ms. Schultz crouched down in an attempt to hide. *Id.* at 154. Soon thereafter, she heard a "loud noise" immediately after which the man was "standing right there in [her] kitchen." *Id.* at 154-58, 167. The man then closed the back door (through which he had just entered) and locked it. *Id.* at 158.

Zana Schultz arose and asked the man "what the hell he was doing in [her] home." *Id.* at 158-59. The man stated that "he was meeting someone," to which Schultz responded, "not in my house." *Id.* at 159. Schultz then chased the man out of her home. *Id.* As the man raced to his van, Schultz observed him placing a long, gray-handled screwdriver in his back pocket. *Id.* at 159-60. The man quickly drove away at which point Schultz phoned 9-1-1. *Id.* at 161-62, 167-68. Schultz provided a description of the man who had entered her home, as well as the van he was driving. (Trial Transcript, May 11, 1999, 162; Trial Transcript, May 12, 1999, 99).

Deputy Christopher Codden responded to Schultz's 9-1-1 call, arriving at her residence only a few minutes later. (Trial Transcript, May 11, 1999, 177-78; Trial Transcript, May 12, 1999, 97-99). Shortly after arriving at the Schultz residence, Deputy Codden was informed that the Michigan State Police had just stopped a man, matching Schultz's description, who was driving a van which also matched Schultz's description. (Trial Transcript, May 12, 1999, 8, 99). Deputy Codden then transported Ms. Schultz to the location where the van was stopped. *Id.* at 8-10, 56-62, 69-72, 104.

After arriving at the scene, Zana Schultz identified the van which the police had stopped as the van which the intruder had driven into her back yard earlier that morning. *Id.* at 9-10, 105-08.

Schultz also identified Petitioner (who was driving the van when it was stopped by the police) as the man who had - without permission - entered her house earlier that morning.  *Id.* at 11-12, 49-50, 73-75, 105-08.  The police also recovered from Petitioner's van, a gray-handled screwdriver which Schultz identified as the one which Petitioner placed in his back pocket as he ran from her residence.  *Id.* at 12-14, 80-81.  An investigation revealed that Petitioner gained entry to the Schultz home by prying open the back door.  *Id.* at 48-49, 100-01.  Two separate forensics examinations revealed that the damage to the door frame of the back door to the Schultz's mobile home could have been produced by the gray-handled screwdriver which Zana Schultz observed Petitioner carrying during his invasion of her home. *Id.* at 126-31, 140-44, 174.

Following a jury trial, Petitioner was convicted of First Degree Home Invasion.  (Trial Transcript, May 14, 1999, 147-48).  At sentencing, Plaintiff conceded that he had been convicted of "at least" four previous felonies and was sentenced to 20-40 years in prison as a fourth habitual offender. (Sentencing Transcript, June 14, 1999, 22, 27).  Asserting the following claims, Petitioner appealed his conviction in the Michigan Court of Appeals:

I. The prosecution failed to produce sufficient evidence at trial to sustain a jury verdict, finding Defendant guilty beyond a reasonable doubt of the crime of first degree home invasion.

II. Defendant's conviction must be reversed due to the erroneous admission of other acts evidence by the trial court, which resulted in a miscarriage of justice.

III. The trial court's jury instructions were reversibly erroneous where it:

(A) failed to give the jury proper final instructions on flight, concealment or attempted escape, a controlling issue in the case.

      (B)    improperly gave the prosecution's requested instruction on "false exculpatory statements" by Defendant.

      (C)    trial counsel was ineffective for failing to ensure that the jury was properly instructed.

IV.    Defendant's sentencing proceeding was tainted by reversible error, where the trial court:

      (A)    failed to individualize his sentence or articulate reasons for imposing a 10-20 year sentence then enhancing the sentence under the habitual offender act to 20-40 years.

      (B)    violated the concept of proportionality in imposing the 20-40 year sentence upon Defendant.

The court affirmed Petitioner's conviction. *People v. Fulton*, No. 220749, Opinion (Mich. Ct. App., November 30, 2001). Asserting the following issues, Petitioner moved the Michigan Supreme Court for leave to appeal:

I.    The prosecution failed to produce sufficient evidence at trial to sustain a jury verdict, finding Defendant guilty beyond a reasonable doubt of the crime of first degree home invasion.

II.    Defendant's conviction must be reversed due to the erroneous admission of other acts evidence by the trial court, which resulted in a miscarriage of justice.

III.    The trial court's jury instructions were reversibly erroneous where it:

      (A)    failed to give the jury proper final instructions on flight, concealment or escape, controlling issues in the case.

      (B)     improperly gave the prosecution's requested instruction on "false exculpatory statements" by Defendant.

      (C)     trial counsel was ineffective for failing to ensure that the jury was properly instructed.

IV.    Defendant's sentencing proceeding was tainted by reversible error, where the trial court:

      (A)     failed to individualize his sentence or articulate reasons for imposing a 10-20 year sentence then enhancing the sentence under the habitual offender act to 20-40 years.

      (B)     violated the concept of proportionality in imposing the 20-40 year sentence upon Defendant.

V.    The sentence on the underlying offense was never vacated before imposing the habitual offender sentence.

The court denied Petitioner's request for leave to appeal. *People v. Fulton*, No. 120582, Order (Mich., May 29, 2002). On October 21, 2002, Petitioner filed in the trial court a motion for relief from judgment in which he asserted the following claims:

I.    Defendant was denied his state and federal constitutional right to due process of law when the trial court confused and mislead the jury, preventing the Defendant from presenting relevant testimony, made its view known in the presence of the jury, gave instructions relieving the prosecutor of his duty and gave additional instructions in the absence of the Defendant.

II.    Defendant was denied his state and federal constitutional right to due process of law, when the prosecutor deceived the jury with facts not in the record, invited the jury to consider limited purpose evidence to determine guilt and by commenting on Defendant's right not to testify.

III.      Defendant was denied his state and federal constitutional right to due process of law when he was sentenced as an habitual offender fourth, based on three convictions where he was without counsel.

IV.      Defendant was denied his state and federal constitutional right to due process of law, where counsel failed to offer him effective assistance of counsel.

V.      Defendant and his attorney were not allowed to inspect or challenge the court's PSI report before sentencing and where the court based its sentencing upon inaccurate information from the undisclosed report.

The trial court denied Petitioner's motion. *People v. Fulton*, No. 97-2774-FH, Opinion

(Osceola County Cir. Ct., Dec. 26, 2002). Petitioner subsequently moved in the Michigan Court of

Appeals for leave to appeal the trial court's ruling, asserting the following claims:

I.      Defendant was denied his state and federal constitutional right to due process of law when the trial court confused and mislead the jury, preventing the Defendant from presenting relevant testimony, made its view known in the presence of the jury, gave instructions relieving the prosecutor of his duty and gave additional instructions in the absence of the Defendant.

II.     Defendant was denied his state and federal constitutional right to due process of law, when the prosecutor deceived the jury with facts not in the record, invited the jury to consider limited purpose evidence to determine guilt and by commenting on Defendant's right not to testify.

III.     Defendant was denied his state and federal constitutional right to due process of law when he was sentenced as an habitual offender fourth, based on three convictions where he was without counsel during the convictions.

IV.     Defendant was denied his state and federal constitutional right to due process of law, where counsel failed to offer him effective assistance of counsel.

The court denied Petitioner's motion for leave to appeal because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Fulton*, No. 245971, Order (Mich. Ct. App., Aug. 13, 2003). Raising the same issues, Petitioner moved in the Michigan Supreme Court for leave to appeal this decision. The court denied Petitioner's request because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Fulton*, No. 124498, Order (Mich., Jan. 27, 2004).

Prior to the conclusion of the appeal of his initial motion for relief from judgment (described immediately above), Petitioner submitted in the trial court a second motion for relief from judgment in which he asserted the following claim:

> I.     Whether Mr. Fulton is entitled to be resentenced, where neither he nor his attorney were informed of the different presentrence report given to the sentencing judge before sentencing, where the judge based his sentence on the undisclosed report, and where he was denied his statutory and due process right to inspect, challenge and be sentenced on accurate information.

The trial court denied Petitioner's motion. *People v. Fulton*, No. 97-2774-FH, Opinion (Osceola County Cir. Ct., Nov. 19, 2003). Asserting the same claim, Petitioner subsequently moved in the Michigan Court of Appeals for leave to appeal the trial court's ruling. The court dismissed Petitioner's motion for leave to appeal "for lack of jurisdiction because the defendant cannot appeal the denial or rejection of a successive motion for relief from judgment." *People v. Fulton*, No. 252664, Order (Mich. Ct. App., Jan. 21, 2004). Petitioner did not appeal this determination to the Michigan Supreme Court. On March 16, 2004, Petitioner initiated the present action in which he asserts the following claims:

> I.     Defendant was denied his state and federal constitutional right to due process of law, when the trial court confused

-7-

and mislead the jury, preventing the Defendant from presenting relevant testimony, made its view known in the presence of the jury, gave instructions relieving the prosecutor of his duty and gave additional instructions in the absence of Defendant.

II. Defendant was denied his state and federal constitutional right to due process of law, when the prosecutor deceived the jury with facts not in evidence to determine guilt and by commenting on Defendant's right not to testify.

III. Defendant was denied his state and federal constitutional right to due process of law when he was sentenced as a habitual offender fourth based on three convictions where he was without counsel during the convictions.

IV. Defendant was denied his state and federal constitutional right to due process of law, where counsel failed to offer him effective assistance of counsel.

V. Where Defendant nor his attorney was allowed to inspect or challenge the court's PSI report before sentencing and where the court based its sentencing upon inaccurate information from the undisclosed report.

## STANDARD OF REVIEW

Fulton's petition, filed, March 16, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

                        law, as determined by the Supreme Court of the United States, or

        (2)        resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather,

the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340

F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). Furthermore, to find that a petitioner has procedurally defaulted a particular claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish the existence of cause and prejudice for his procedural default, or if a fundamental miscarriage of justice would result from the failure to grant the relief he seeks. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Coleman*, 501 U.S. at 750-51; *Buell*, 274 F.3d at 348.

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish that a miscarriage of justice would result from the Court's failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The burden to make this showing rests with Petitioner, *see Floyd v. Alexander*, 148 F.3d 615, 618 (6th Cir. 1998); *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997), who must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error probably resulted in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 326. This requires Petitioner to overcome a hurdle higher than that to establish prejudice. *Id.*

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a

sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002); *Simpson*, 238 F.3d at 407. Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues against which it is applied. *Id.*

As discussed above, claims I-IV asserted in the present petition for writ of habeas corpus were not asserted in Petitioner's appeal as of right, but were instead first asserted in Petitioner's initial motion for relief from judgment. As previously noted, the Michigan Court of Appeals and the Michigan Supreme Court both rejected these claims on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Petitioner has, therefore, procedurally defaulted claims I-IV asserted in his petition for writ of habeas corpus. Moreover, Petitioner has failed to establish either cause and prejudice for his default or that a fundamental miscarriage of justice would result from the failure to grant the relief he seeks. Accordingly, the Court is prevented from reviewing the merits of claims I-IV asserted in Petitioner's writ of habeas corpus.

The Court is likewise prevented from reviewing the merits of claim V asserted in Petitioner's petition for writ of habeas corpus. Defendant presented this issue to the trial court in his initial motion for relief from judgment, but did not present it to the Michigan Court of Appeals or the Michigan Supreme Court when he appealed the trial court's ruling denying his motion for relief from judgment. Petitioner again presented this issue to the trial court in his second motion for relief from judgment. In his appeal of the trial court's decision denying his motion, Petitioner presented this issue to the Michigan Court of Appeals. However, the Michigan Court of Appeals denied Petitioner's request for relief, a determination which Petitioner never appealed to the Michigan Supreme Court.

Before seeking habeas relief in the federal courts, Petitioner must first exhaust in the state courts those claims upon which habeas relief is sought. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1). Exhaustion requires that Petitioner provide the "highest court in the state" a "full and fair opportunity" to pass upon his claim that his federal rights have been violated. *Rust v. Zent* 17 F.3d 155, 160 (6th Cir. 1994); *see also*, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (petitioners must "fairly present" their federal habeas claims to the state courts).

As noted above, Petitioner never presented claim V asserted in his petition for writ of habeas corpus to the Michigan Supreme Court. By failing to present this particular claim to the Michigan Supreme Court, Petitioner has failed to properly exhaust this claim. *See* 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Rust*, 17 F.3d at 160. Moreover, Petitioner has since forfeited the ability to pursue this claim in the state courts. While he could assert this claim in a motion for relief from judgment, Michigan court rules indicate that a defendant can file only one such motion, *see* M.C.R. 6.502(G)(1), and Petitioner has already filed two such motions.[1]

Generally, federal courts are required to dismiss habeas petitions which contain unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509 (1982). However, if the state no longer provides a "remedy for the habeas petitioner to pursue," the issue is not lack of exhaustion, but "rather, it is a

---

[1] While it is not entirely clear, Michigan Court Rule 6.508(D)(3) appears to indicate that Petitioner *may*, in fact, be entitled to bring another motion for relief from judgment upon a showing of cause and prejudice. Assuming this interpretation is accurate, the determination whether Petitioner can satisfy the requirements of a particular Michigan court rule seems to be a matter for the courts of the State of Michigan to decide. *See, e.g., Lukity v. Elo*, 2000 WL 1769507 at *4 (E.D.Mich., Oct. 10, 2000) ("[g]iven the inability to conclude that there is an absence of available state corrective procedures, the principles of federal-state comity dictated by the exhaustion doctrine compel this Court to defer to the State of Michigan to interpret its own postconviction statute"); *Williams v. Vasbinder*, 2006 WL 1155567 at *1 (E.D.Mich., April 28, 2006). Accordingly, the Court would be inclined to recommend the dismissal of Fulton's petition for failure to exhaust all available state remedies. However, this is an approach with which the Sixth Circuit disagrees. *See Dorch v. Smith*, 2004 WL 1532242 (6th Cir., June 25, 2004) (finding that petitioner was unable to file a second motion for relief from judgment pursuant to M.C.R. 6.502(G)); *Paffhousen v. Grayson*, 2000 WL 1888659 (6th Cir., Dec. 19, 2000) (same); *Bostic v. Abramajtys*, 1999 WL 96738 (6th Cir., Feb. 3, 1999) (same).

-14-

problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust*, 17 F.3d at 160.  When a petitioner has failed to properly exhaust a particular claim, and there exists no available remedy by which such failure can be corrected, the Court must determine whether there exists cause and prejudice to excuse his failure to present the claim in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

Petitioner has presented neither evidence nor allegation that there exists good cause for his failure to properly assert this claim in the state courts.  Furthermore, Petitioner cannot establish that a fundamental miscarriage of justice would result from the failure to grant the requested relief. Accordingly, the Court is prevented from reviewing the merits of this particular claim.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner has procedurally defaulted the claims asserted in his petition for writ of habeas corpus, preventing their consideration by the Court.  Accordingly, the undersigned recommends that Fulton's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 21, 2007

_/s/ Ellen S. Carmody_____
ELLEN S. CARMODY
United States Magistrate Judge